UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS ALEXANDER,

    Plaintiff,

v.                            CASE NO. 8:24-cv-1893-SDM-TGW

DEPUTY STEVEN STEWART, *et. al.*,

    Defendants.

_____/

**<u>ORDER</u>**

Alexander sues under 42 U.S.C. § 1983 and names as the defendants four deputies in the Pasco County Detention Center: Steven Stewart, Joseph Stearns, Michael Brady, and Corporal Manuel Haag.  Alexander alleges that the defendants (1) violated his federal protections both by using excessive force and by failing to intervene to stop each other from using excessive force and (2) violated his state law protections from assault and battery.  The defendants move (Doc. 20) under Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss the complaint and assert three arguments for dismissal: insufficiently drafted pleading, qualified immunity for the alleged civil rights violations, and statutory immunity for the alleged state law violations.  Also, the defendants contend that Alexander is not eligible for declaratory relief.

A. <u>**Shotgun Pleading:**</u>

The defendants move to dismiss the complaint as a prohibited "shotgun pleading." "A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quoting *Weiland*, 792 F.3d at 1320. In general terms, four types of "shotgun pleadings" exist and each is condemned, as *Yeyille v. Miami Dade County Public Schools*, 643 F. App'x 882, 884 (11th Cir. 2016),[1] explains:

> "Shotgun" pleadings are cumbersome, confusing complaints that do not comply with the[ ] pleading requirements. We have repeatedly condemned shotgun pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 nn.11–15 (11th Cir. 2015). There are four basic types of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Id.* at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The defendants contend that Alexander's complaint is the third type of "shotgun pleading" because the pleading "does not separate each cause of action or claim for relief into a different count." (Doc. 20 at 6) Although correct, the complaint is sufficiently clear for both the defendants and the district court to discern Alexander's

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

specific claims against a specific defendant based on that defendant's alleged acts. Consequently, as written the complaint "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Wieland*, 792 F.3d at 2323. Dismissal of this *pro se* complaint as a "shotgun pleading" is unwarranted.

## B. Motion to Dismiss:

Although a *pro se* complaint receives a generous interpretation, *see, e.g., Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*), and *Roy v. Ivy*, 53 F.4th 1338, 1346 (11th Cir. 2022), the complaint must meet certain pleading requirements. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and must provide "more than labels and conclusions [or] a formulaic recitation of the elements of the cause of action . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), summarizes the pleading requirements as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n.43 (11th Cir. 2008),

explains that "*Twombly* [i]s a further articulation of the standard by which to evaluate

the sufficiency of all claims brought pursuant to Rule 8(a)." As a consequence,

*Twombly* governs a Section 1983 prisoner complaint. *Douglas v. Yates*, 535 F.3d 1316,

1321 (11th Cir. 2008).

On a motion to dismiss under Rule 12(b)(6), the allegations in the complaint

are viewed in the light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*,

334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.

2003). The allegations of fact and any reasonable inference must combine to "state a

claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570. And as

*Iqbal*, 556 U.S. at 678, explains, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Also, *Iqbal*, 556 U.S. at 678–79,

instructs that "plausibility" is greater than a mere "possibility" but less than a

"probability."

> The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.
>
> [W]here the well-pleaded facts do not permit the court to infer
> more than the mere possibility of misconduct, the complaint has
> alleged — but it has not "shown" — "that the pleader is entitled to
> relief."

However, a plaintiff must show " 'proof of an affirmative causal connection between

the official's acts or omissions and the alleged constitutional deprivation' in § 1983

- 4 -

cases." *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)).

C. <u>Factual Allegations:</u>

While Alexander was a pre-trial detainee in the Pasco County Detention Center, Defendant Stewart provided Alexander with a clean uniform that Alexander complained was too small.  After Stewart both refused to provide Alexander with a larger uniform and left the unit, Alexander went to Defendant Stearns to complain that he needed an extra-large uniform (not a large), and Stearns replied that he was "not going to overrule" the officer (Stewart) in-charge of the laundry.  Alexander represents that he returned to his cell, removed his uniform, and threw the clothing downstairs onto the floor in the day room area.  Later, when Stearns asked whose uniform was on the floor, Alexander admitted that the uniform was his and admits that he refused to comply with Stearns's order to pick-up and wear the uniform.

Stearns handcuffed Alexander and escorted him downstairs, where they encountered Stewart returning to the unit.  Stearns ordered Alexander to sit and, because Alexander was still handcuffed, each officer grabbed an arm to assist Alexander to sit, which assistance Alexander describes as using "force unreasonably by forcibly pushing Alexander backwards towards the chair." (Doc. 1 at 8 ¶16)  Alexander represents that, because he did not know a chair was behind him, he "tightened up his legs in defense to stop himself from falling backwards," and in response Stearns "employ[ed] a knee strike to plaintiff Alexander's solar plexus and left side of his body causing Alexander severe pain and loss of breath." (Doc. 1 at 8–9 ¶17–18)  The officers

began forcing Alexander forward onto the floor but Alexander admittedly resisted by placing "one foot in front of the other then he placed another foot in front of the other" to prevent the officers from forcing him onto the floor, however the officers successfully forced Alexander onto the floor, which "caus[ed] pain to plaintiff's front part of his body, knees and lower back." (Doc. 1 at 9 ¶20)

Alexander alleges that, after he was on the floor and while still handcuffed, "Stearns continued to use harmful force unreasonably by ramming the right side of Alexander's head into the concrete floor." (Doc. 1 at 9 ¶21)  Two other officers, Defendants Corporal Haag and Deputy Brady, arrived and assisted.  Brady grabbed Alexander's ankles and Haag directed another officer to retrieve and apply leg restraints.  Alexander alleges that, despite his not resisting, "Stewart continued to employ harmful force unreasonably by ramming Alexander's forehead into the concrete floor [and] ramming the left side of Alexander's head into the concrete floor." (Doc. 1 at 9 ¶24)  Alexander represents both that the officers lifted Alexander off the floor and escorted him to a chair and that a nurse arrived to examine Alexander, who complained that he was dizzy and that his head and neck hurt, but the nurse "ignored" his complaints and told him to submit a "sick call."

### D. Qualified Immunity:

Each defendant asserts entitlement to qualified immunity.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "[T]o prove an excessive

force claim, a pretrial detainee must show . . . that the officers' use of . . . force was *objectively* unreasonable," *Kingsley v. Hendrickson*, 576 U.S. 389, 391–92 (2015) (italics original), and "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Under the above facts, each defendant may assert entitlement to qualified immunity because each was acting within their discretionary authority and, consequently, the burden shifts to Alexander to establish that "the officers violated a constitutional right that was clearly established at the time of the alleged violation." *Ingram v. Kubick*, 30 F.4th 1241, 1250 (11th Cir. 2022).  A non-exhaustive list of factors to consider that "may bear on the reasonableness or unreasonableness of the force used [include] the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

As stated above, because this review proceeds under a motion to dismiss, the allegations in the complaint are viewed in the light most favorable to the plaintiff; the defense of qualified immunity affords the moving party no deference regarding disputed facts.  "In qualified immunity cases, [viewing the facts in favor of the non-moving party] usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. at 372, 378 (2007).  Although both whether to use force and the amount of

force to use is determined objectively from the view of the officer, entitlement to qualified immunity is determined based on the plaintiff's version of disputed facts. Alexander's claims against the four defendants is divisible into two sections: before Alexander was forced onto the floor and after he was on the floor.[2]

The first section involves only Defendants Stewart and Stearns. Alexander admits that he refused Stearns's order to sit and that he physically resisted the efforts by Stearns and Stewart both to force him to sit and to get onto the floor. Under these undisputed facts, and especially in a detention facility with other detainees present, the need to use force is objectively reasonable. Pulling Alexander's arms, applying a knee-strike to his abdomen to get him to sit, and forcibly pushing him onto the floor are objectively reasonable amounts of force. Because the force was both objectively necessary and objectively reasonable, Stewart had no duty to intervene to stop Stearns from applying the knee-strike to Alexander's abdomen. Consequently, Stearns and Stewart are entitled to qualified immunity based on the use of force and the failure to intervene regarding the first section.

The second section involves all four defendants. Alexander alleges that both Stewart and Stearns used excessive force after he was on the floor, specifically, "Stewart . . . ram[med] Alexander's forehead into the concrete floor [and] continued to use excessive force by ramming the left side of Alexander's head into the concrete floor (Doc. 1 at 4 ¶24); "Stearns . . . ram[med] the right side of Alexander's head into the

---

[2] The first part is based on the facts alleged in paragraphs 1–20 in the complaint (Doc. 1 at 6–9) and the second part of based on the facts alleged in paragraphs 21–26. (Doc. 1 at 9–10)

concrete floor" (Doc. 1 at 4 ¶21).  Also, Alexander alleges that all four defendants violated his rights by failing to intervene, specifically, Stewart and Stearns failed to intervene to stop the other from using excessive force, and Haag and Brady failed to intervene to stop Stewart and Stearns from using excessive force.  Whether the use of force was objectively reasonable depends on whether the force was necessary to gain control over Alexander.  Alexander represents both that Stewart warned Alexander that he would deploy his taser if Alexander did not stop fighting and that Alexander responded, "how am I fighting you with handcuffs on?"  (Doc. 1 at 10 ¶24)  As stated above, under this motion to dismiss Alexander's version of disputed facts governs, and Alexander alleges that he was not resisting.  Consequently, dismissal based on qualified immunity is unwarranted.[3]

### E. State Law Assault and Battery:

Alexander alleges state law claims for assault and battery against Stewart and Stearns.  To qualify for supplemental jurisdiction the state claims must both "form part of the same case or controversy" as the federal claims and "arise from the same facts and involve similar occurrences, witnesses, or evidence."  *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1310 (11th Cir. 2016).  Supplemental jurisdiction over Alexander's assault and battery claims is proper under 28 U.S.C. § 1367(a) because the state and federal claims involve the same parties and the same use-of-force incident.

---

[3] Alexander represents that the incident was captured by video cameras.

Stewart and Stearns move to dismiss Alexander's state law claim of assault. Alexander misunderstands the difference between the civil tort of "assault" and the separate civil tort of "battery." "Assault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Robinson v. Lambert*, 753 F. App'x 777, 784 (11th Cir. 2018) (quoting *Lay v. Kremer*, 411 So.2d 1347, 1349 (Fla. 1st DCA 1982)). Alexander's claims against Stewart and Stearns are based on their actual use of force, not their threatened use force. Consequently, Stewart and Stearns are entitled to the dismissal of the state law claim of assault.

Additionally, Stewart and Stearns move to dismiss the state law claims based on immunity under Section 768.29(9)(a), Florida Statutes, which provides as follows:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

As determined above, both the need and the amount of force initially employed to gain Alexander's compliance was objectively reasonable and, consequently, not employed "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard" for Alexander's safety. Therefore, Stewart and Stearns are entitled to immunity under Section 768.29(9)(a) for their acts alleged in paragraphs 1–20. (Doc. 1

at 6–9)  However, "ramming" Alexander's head into the concrete floor if, as he alleges, Alexander was not resisting could show "bad faith," "malicious purpose," or "wanton and willful disregard" for Alexander's safety.  Consequently, Stewart and Stearns are not entitled to immunity under Section 768.29(9)(a) for their acts alleged in paragraphs 21–26.  (Doc. 1 at 9–10)

## F. Declaratory Relief

In addition to compensatory and punitive damages, Alexander requests the district court issue a declaratory judgment stating that the defendants' acts violated his rights under both the United States Constitution and state law.  (Doc. 1 at 14)  The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  But declaratory judgment is improper because Alexander's alleged injury has already occurred.  The purpose of a declaratory judgment is to permit "actual controversies to be settled before they ripen into violations of law," not to adjudicate past conduct.  10B C. Wright & A. Miller, *Federal Practice and Procedure*, Civil 3d § 2751.  Consequently, the defendants are entitled to the dismissal of Alexander's request for declaratory relief.

* * * *

The motion to dismiss (Doc. 20) is **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**.  Alexander's federal excessive force claims and the state law claims against Defendants Stewart and Stearns are dismissed based on the allegations in paragraphs  1–20 (Doc. 1 at 6–9) but Alexander may proceed with his

federal excessive force claims against all defendants and his state law battery claims

against Defendants Stewart and Stearns based on the allegations in paragraphs 21–26

(Doc. 1 at 9–10)   Also, Alexander's state law claim for assault is **DISMISSED** and his

request for declaratory relief is **STRICKEN** as improper.  Not later than **MONDAY,**

**JANUARY 12, 2026**, the defendants must file their answer.  Each party has until

**MONDAY, APRIL 13, 2026**, to complete discovery and **FORTY-FIVE DAYS** after

the close of discovery to move for summary judgment.

ORDERED in Tampa, Florida, on December 17, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 12 -